## In re LIBERTY CONSTRUCTION & DEVELOPMENT CORP., Debtor.

## LIBERTY SAVINGS BANK, Plaintiff,

v.

## LIBERTY CONSTRUCTION & DEVELOPMENT CORP., Defendant.

Bankruptcy No. 87–00532–A.

Relief from Stay No. 87–0222–A.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 30, 1989.

Richard A. Bartl, Tyler, Bartl, Burke & Albert, Alexandria, Va., for debtor-in-possession.

Stephen S. Mitchell, McKinley, Schmidtlein & Mitchell, Alexandria, Va., for plaintiff.

Stephen Fox, Bernadette A. Fritschie, Fox & Proffit, P.C., Fairfax, Va., and Stanley S. Samorajczyk, Linda S. Broyhill, Richard E. Lear, Hazel, Thomas, Fiske, Beckhorn & Hanes, Fairfax, Va., for First Manassas Corp., intervenor.

### MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr.,
Chief Judge.

We are called upon, in this case, to determine whether a deed of trust held by Liberty Savings Bank ("the Bank" or "the Plaintiff") grants lien status to disbursements that the Bank made to Liberty Construction & Development Corporation ("Liberty

Construction" or "the Debtor") in excess of the original amount secured by the deed of trust.

On July 16, 1985 Liberty Construction executed to Liberty Savings Bank a $594,000 promissory note secured by a deed of trust on property known as the Liberty Run subdivision ("Liberty Run"). The purpose of the loan was for land acquisition and development to enable Liberty Construction to acquire and develop Liberty Run. The development work consisted of completing the streets, sewers, gutters and curbs.

On March 19, 1987, Liberty Construction filed a petition in this Court under Chapter 11 of the Bankruptcy Code.[1] The Bank moved for relief from the automatic stay on April 28, 1987 to enable it to foreclose on the Liberty Run parcels. Ruling that Liberty Run had a fair market value of $451,000 and a balance of $401,724.05 due on the note, this Court found sufficient equity in the Liberty Run property to continue the stay.[2] The Court, however, ordered counsel to submit proposed findings of fact and conclusions of law with respect to whether the Bank's deed of trust granted lien status to overdisbursements that the Bank made in excess of the original amount of $594,000 secured by the deed of trust.[3]

The Bank contends that paragraph 7 of the deed of trust grants lien status to the overdisbursements. Paragraph 7 provides in pertinent part:

Protection of Lender's Rights in the Property; Mortgage Insurance.

If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or to enforce laws or regulations), then *Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property.* Lender's actions may in-

---

1. The Chapter 11 petition was converted to a Chapter 7 on January 1, 1989.

2. Pursuant to an Order of this Court dated March 23, 1988, the Debtor was authorized to sell the Liberty Run property for $588,000. The Debtor originally had a contract to sell the Liberty Run property to First Manassas Corporation ("First Manassas"), an intervenor in this action. Upon the Debtor's rejection of its contract to sell the Liberty Run parcels to First Manassas, First Manassas filed an action in state court to recover pre-rejection and post-rejection damages. Until all issues relating to lien priority and validity have been resolved, the proceeds from the sale of the Liberty Run property have been ordered by this Court to remain in an interest-bearing account.

3. The term "overdisbursement" refers to all payments that the Bank made in excess of the original amount of the promissory note secured by the deed of trust. Although there is testimony that the parties agreed that the Bank's overdisbursements total $167,000, the Liberty Run Construction Loan Transaction Sheet reveals that the total amount of disbursements made under the $594,000 loan totalled $748,352.83, with overdisbursements thus totalling $154,352.83. *See* Transcript of Further Hearing on Combined Motions for Relief From Stay, September 2, 1987, p. 79(a) [hereinafter "Transcript"]; Plaintiff's Exhibit 5 (Liberty Run Construction Loan Transaction Sheet). We note the differing views on the amount of the overdisbursements made and expect that the parties will verify the exact amount.

We note, but reject, the Bank's suggestion that because the principal balance due exceeded the amount of the promissory note only for a two day period from June 4 to June 6, 1986 for the amount of $4,966.10, that we should consider the loan overdisbursed only for that amount. We find the Bank's position untenable for several reasons. First, the terms of the deed of trust secure only $594,000. The deed of trust does not specifically provide that all funds disbursed in excess of $594,000 would be secured as long as the principal balance remained at $594,000. The Bank's position would read into the language of the deed of trust a meaning beyond its specific terms. Although construing the deed of trust in the manner suggested by the Bank would protect the Bank's interest in hindsight, such a reading would unfairly prejudice subsequent lienholders, who would have no knowledge that the deed of trust secured advances in excess of $594,000 as long as the balance due on the note remained at $594,000. Second, based upon the testimony and the exhibits, whether taken individually or examined as a whole, we can find nothing to indicate that the parties intended that all disbursements made in excess of $594,000 would be secured as long as the balance due on the note remained at $594,000. Accordingly, we reject the Bank's suggestion that the overdisbursements totalled $4,966.10.

clude paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

*Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument.* Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment. (emphasis added).

The Bank asserts that because it made the additional payments at Liberty Construction's request and, in the Bank's judgment, primarily to protect the value of the Bank's collateral since the payments were used to complete improvements to the Liberty Run subdivision, then paragraph 7 grants lien status to the overdisbursements. In contrast, Liberty Construction contends that paragraph 7 does not grant lien status to the overdisbursements. Liberty Construction asserts that the Bank made the overdisbursements to protect a letter of credit that the Bank issued to the City of Manassas to guarantee completion of the public improvements to the Liberty Run subdivision.[4]

Because the terms of the deed of trust are controlling, we turn now to paragraph 7 of that instrument, which the Bank asserts is the basis for its overdisbursements acquiring lien status.[5] The pertinent provisions of paragraph 7 provide,

[i]f Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property ..., then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the property. Any amounts disbursed ... under this paragraph shall become additional debt of Borrower secured by this Security Instrument.

Thus, paragraph 7 grants lien status to the Bank's overdisbursements only if several requirements are met. First, there must be a legal proceeding that may significantly affect the lender's rights in the property, or the borrower must have breached an agreement in the deed of trust, and second, the disbursements must be necessary for the protection of the property. We consider these requirements seriatim.

With respect to the first condition, the president of Liberty Savings Bank, Jon Burleson, testified that when the Bank made the first overdisbursement on June 4, 1986, there was no legal proceeding that had significantly affected the Bank's rights in the property.[6] Mr. Burleson further testified, however, that on June 4, 1986 the Debtor had been in violation of several covenants in the deed of trust. Specifically, Burleson stated that the Debtor had not complied with paragraph 1, which requires the borrower to pay the interest on the note; paragraph 4, which requires the bor-

---

**4.** The Intervenor, First Manassas Corporation, contends that paragraph 7 of the Bank's deed of trust does not grant lien status to the Bank's overdisbursements. Proper disbursements under paragraph 7, First Manassas asserts, include payments to satisfy liens but not payments to complete the improvements to Liberty Run.

**5.** Section 55–59 of the Virginia Code provides in pertinent part:

Every deed of trust to secure debts ... is in the nature of a contract and shall be construed according to its terms, ... provided that unless otherwise provided therein, it shall be construed to impose upon the parties ...

the following duties, rights and obligations ... (1) The deed shall be construed as given to secure the performance of each of the covenants entered into by the grantor as well as the payment of the primary obligation. Va. Code Ann. § 55–59 (1986).

No Virginia court has considered whether a covenant similar to paragraph 7 in Liberty Bank's deed of trust grants lien status to overdisbursements made to complete public improvements to property serving as collateral.

**6.** *See* Transcript, pp. 80(a)–81(a) (testimony of Jon Burleson).

rower to pay the taxes on the property;[7] paragraph 5, which requires the borrower to keep hazard insurance on the property; and paragraph 6, which mandates that the borrower not damage or commit waste on the property.[8] In light of Mr. Burleson's unrefuted testimony on this point, we find that the Debtor was in violation of several covenants in the deed of trust when the first overdisbursements were made in June, 1986.

Having established that the Debtor was in violation of several agreements in the deed of trust, we now turn to the second requirement of paragraph 7 that the disbursements, to be secured, must have been necessary for the protection of the property. Liberty Savings Bank submits that the payments were necessary to protect the property on several bases. First, the Bank contends that it made several overdisbursements to prevent the filing of liens on the property and that such payments were "necessary for the protection of the property" within the meaning of paragraph 7. Specifically, the Bank's president, Jon Burleson, testified that the Bank made overdisbursements to the subcontracting firms of Vulcan Materials and Skippy's Trucking Company to insure that Liberty Construction would have the needed materials to complete the improvements to Liberty Run. Burleson testified that if the Bank had not made the overdisbursements, the subcontractors would have filed liens on the Liberty Run property.

The Court finds the Bank's contention on this point unpersuasive. First, although paragraph 7 specifically secures disbursements to satisfy "a lien which has priority over this Security Instrument" it does not specifically secure payments made by the Bank to avoid the filing of potential liens. We cannot interpret paragraph 7 beyond its specific terms, in that such a broad reading would unfairly prejudice subse-

quent lienholders. In addition, even if this Court interpreted paragraph 7 as securing payments to avoid the filing of potential liens, there is no certainty that any subcontractor would have filed a lien to collect payment in view of the fact that Liberty Savings Bank had guaranteed payment to the subcontractors.[9] Accordingly, we reject the Bank's contention that payments made to avoid the filing of liens were granted lien status under paragraph 7.

Second, the Bank contends that "protection" under paragraph 7 would include overdisbursements to complete the Debtor's improvements to Liberty Run, which caused the property to appreciate in value. The essence of the Bank's argument is that all disbursements in excess of the loan amount were necessary to protect the value of the Bank's collateral by bringing the project to completion. Again, we find unpersuasive the Bank's contention that "protection" includes disbursing funds to increase the value of the property. Under Virginia law, a deed of trust is in the nature of a contract and must be construed according to its terms. *See* Va.Code Ann. § 55–59. In construing the terms of a contract or conveyance, Virginia courts adhere to the "plain meaning" rule. *See Amos v. Coffey*, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984) (noting that under the plain meaning rule "[t]he language used [in a contract or conveyance] is to be taken in its ordinary signification ..."). As one Virginia court observed, "[w]ords used by the parties are to be given their usual, ordinary and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it." *Ames v. American Nat'l Bank*, 163 Va. 1, 39, 176 S.E. 204, 217 (1934).

---

7. Mr. Burleson subsequently admitted that, although the county taxes had not been paid as of June, 1986, the taxes had not become due at that point.

8. Burleson testified that the Debtors had buried trash on the Liberty Run property which subsequently had to be removed.

9. *See* Defendant's Exhibits B, C (Liberty Savings Bank's guarantee of payment to Vulcan Materials and Skippy's Trucking Company).

The ordinary meaning of the word "protect" is "to maintain the status of." *See* Webster's Ninth New Collegiate Dictionary, 946 (1983). Here, the funds disbursed were not used to maintain the status of the property, but to increase the value of the property. Thus, the Bank's interpretation of "protection" does not comport with the plain meaning of the word "protect". We decline now to adulterate the plain meaning of the terms of the deed of trust to enable the Bank, in hindsight, to protect itself, when the Bank easily could have protected its interests by either demanding more security when the initial loan was made or by executing a loan modification agreement when the first overdisbursements were made on June 4, 1986.

Furthermore, assuming *arguendo* that the term "protect" did include payments which increased the value of the property, the record and testimony reveal that such funds were not "necessary," within the meaning of paragraph 7, to complete the improvements to, and thereby protect, the property. The record reveals that the Liberty Run subdivision consisted of an undeveloped eleven acre lot, on which Liberty Construction was to develop the public right-of-ways, which were essentially the streets, curbs, gutters and sewers.[10] The record further reveals that Liberty Savings Bank issued to the City of Manassas a letter of credit, which authorized the City to draw on the Bank up to $445,271.[11] The purpose of the letter of credit was to insure that the public improvements on Liberty Run, which Liberty Construction was performing, would be completed.[12] The Bank cannot be heard to say that the overdisbursements were necessary to complete the improvements to, and thereby protect the property, when the Bank itself had issued a letter of credit to the City of Manassas to complete the improvements to Liberty Run. Accordingly, the improvements likely would have been completed regardless of whether the Bank had made the overdisbursements.

After careful consideration and for the reasons set forth above, we conclude that paragraph 7 of the deed of trust held by Liberty Savings Bank does not grant lien status to disbursements that the Bank made in excess of $594,000. Accordingly, the overdisbursements shall remain in escrow until further order of this Court.

An appropriate order shall enter.

---

**10.** See Debtor's Findings of Fact, p. 1.

**11.** *See* Defendant's Exhibit A (irrevocable letter of credit, No. 008–85).

